## Herbert W. Lorenz et al v. George A. Rowley et al

[ 177 A.2d 364 ]

November Term, 1961

Present: Hulburd, C. J., Shangraw, Barney and Smith, JJ. and Daley, Supr. J.

Opinion Filed January 2, 1962

*Kinney & Cook* for the plaintiffs.

*Edwin W. Lawrence* for the defendants.

**Shangraw, J.** This is a proceeding in chancery. Hearing was held before the chancellor. Findings of fact were made and a decree was entered dismissing the bill of complaint with costs to the defendants. The case is brought here by notice of appeal duly filed by the plaintiffs.

The bill sought a decree imposing a trust in favor of the plaintiffs on certain land and premises in the town of Londonderry, Vermont, and further relief by way of an accounting of the proceeds received by the defendants from the sale of a portion of the above premises. The plaintiffs also requested injunctive relief relating to that part of the property not disposed of, and concluded with a prayer that the defendants be required to execute a legal conveyance to them of the remaining property not disposed of. The plaintiffs assign error as to certain findings, the chancellor's failure to find, and to the decretal order.

The findings develop these facts. The property in question, used as a girls' summer camp, has a frontage of 3,000 feet on a private lake and consists of about 250 acres of land with buildings thereon, generally consisting of a barn, dining hall, store, lavatories, cabins, and certain recreational equipment and facilities. Located on this property was a quantity of hard and soft wood timber valued at approximately $2,250.

The plaintiffs purchased this land on July 1, 1934 for $6,000 and on August 24, 1934 mortgaged the property to the Brattleboro Trust Company of Brattleboro, Vermont for $5,000. On July 5, 1938 this mortgage was assigned to the County National Bank of Bennington, Vermont. On November 13, 1942 the County National Bank foreclosed the mortgage and on January 11, 1944 a decree was filed ordering the defendants, and other parties in interest, to pay $3,046.35 on

or before the 11th day of March 1944 with interest from the date of the decree. On February 9, 1944 the County National Bank gave Lindley S. Squires, an attorney representing the plaintiffs, an option to repurchase the property on their behalf for the sum of $3,046.35 with interest from January 11, 1944 until date of payment. This option expired July 11, 1944.

In 1941 the plaintiffs were heavily in debt and insolvent, owing various creditors about $20,000 and this situation persisted to a greater or lesser degree to 1944. In 1941 Elmer Hanson was made trustee of plaintiffs' property and upon his appointment assumed the management thereof. No substantial repairs were made on the property during the last years of the plaintiffs' ownership and it was in a general "run down" condition.

During the operation of this property by the plaintiffs, the defendants performed services for the plaintiffs in the nature of trucking, ice cutting and storing, taxi service, and the sale of commodities used by the plaintiffs. On or about July 3, 1944, the plaintiffs, not having been successful in obtaining the necessary funds with which to exercise the option to purchase or in their efforts to obtain someone to do so, called upon the defendants for financial assistance to exercise the option. Plaintiff Herbert W. Lorenz explained to the defendants that his attorney had obtained an option to repurchase the property, and informed the defendants that he knew of a party from whom he could obtain the funds to repurchase the property but that there would be a delay of three to four months which would be too late. At the time of this conversation it was represented, and found by the chancellor, finding No. 12, "* * * that if the defendants would exercise the option for them he would obtain the money and repay defendants in three or four months, and if plaintiffs did not take the property off their hands in three or four months defendants could keep the property as he rather see defendants have it than the bank."

The defendants informed Mr. Lorenz that they did not have the money to loan and did not care to make him one. Later the defendants caused the timber to be cruised, after which Mr. Rowley informed the plaintiffs that they would exercise the option of purchase held by attorney Squires and proceeded to his office where the option was assigned to the defendants. The defendants were under no obligation to salvage this property for the plaintiffs. However, on July 10, 1944

they obtained from the bank a warranty deed to the property and paid the sum of $3,429.78. $3,000 of this amount was obtained by them on a loan from Ralph A. Jones.

To preserve the continuity of events we refer to finding No. 17 which is challenged by the plaintiffs.

"17. Said option was assigned to the defendants with the understanding that they, the defendants, had reached an agreement with the plaintiff as to the disposition of the property subsequent to its redemption by the defendants."

On July 11, 1944 the plaintiffs and defendants went to an attorney's office in Rutland for the purpose of having an agreement prepared concerning the disposition of the property, title to which was then in the names of the defendants. By reason of their differences no agreement was prepared. Mr. Lorenz returned to his place of employment in Ohio the afternoon of July 11, 1944 following the conference at the law office. On several occasions during the summer of 1944, subsequent to July 12th, Mrs. Lorenz and the defendants discussed an agreement but no agreement concerning the property was ever made. During the summers of 1944-1945 the plaintiffs operated the property as a girls' camp. The defendants did not request payment of rent, nor did the plaintiffs offer to pay any.

About February 1, 1945 the defendants sold a quantity of timber off said property and received the sum of $2,250. Later, on March 28, 1947 they sold all of the property except a so-called "40 acre lot" to Mr. and Mrs. Nathan Frankfurt for the sum of $5,500. The defendants paid a brokerage fee of $500. This sale was consummated without notice to the plaintiffs. The defendants at the time of hearing, June 1956, owned the 40-acre lot which had a value of $1,900.

The plaintiffs at no time had the funds with which to exercise the repurchase option, nor did they at any time offer to pay or tender the defendants any sum or sums of money for a conveyance of the property to them, or make a demand upon the defendants for a conveyance of the property.

The chancellor was unable to find the fair market value of the property in July 1944; however, the following finding was made, which plaintiffs urge is not supported by the evidence.

"45. The property consisted of 250 acres with a number of buildings admittedly not in 'A-1 condition,' but did possess a sub-

stantial value. The fact a part of it was sold in 1945-1947 for $7,750.00 and that portion not sold having a valuation of $1,900.00 would indicate the value of the over-all property in July of 1944 was approximately $9,000.00. However, we are not making a finding of this value as there is no evidence in the case upon which such a finding can be based."

The plaintiffs assert error in finding No. 17 wherein the chancellor found that the option was assigned with the understanding that an agreement had been reached by the parties as to the disposition of the property subsequent to its redemption. Plaintiffs first sought financial assistance from the defendants on July 3, 1944. The expiration date of the option was July 11, 1944. Time was running out. To induce the defendants to come to their rescue Mr. Lorenz informed the defendants, finding No. 12, "* * * that if the defendants would exercise the option for them he would obtain the money and repay defendants in three or four months, * * *" otherwise the defendants could keep the property. These conditions apparently prompted the defendants to come to the relief of the plaintiffs. They were only business friends standing at arms-length, nothing more. The plaintiffs failed to follow through by repayment within the period specified and agreed to.

In our consideration of finding No. 17, we must and do consider the related finding No. 12. These clearly indicate an agreement as to the disposition of the property subsequent to its redemption by the defendants, and these findings are not limited to an agreement to exercise the option. This is supported by that part of finding No. 12 stating that if the plaintiffs did not take the property off their hands in three or four months the defendants could keep the property. The record supports this finding.

The plaintiffs claim error by virtue of finding No. 45, above quoted, and relating to the sale price of the property sold, and the value of that not disposed of. In view of the reasons and basis upon which this case is disposed of this finding becomes of no consequence, even though it conforms to evidence introduced.

The plaintiffs filed two requests to find, Nos. 29 and 60, and assign error by reason of the chancellor's failure to so find. Request No. 29 states that the "Defendant George A. Rowley paid Attorney Squires only one dollar consideration for the assignment." Even though this

requested finding is supported by the evidence, such a finding, if made, would not influence the result arrived at in this opinion.

No. 60 is a request for the chancellor to find that the defendants hold as trustees for the benefit of the plaintiffs the proceeds derived from the sale of portions of the property, as well as the 40-acre lot retained by the defendants. This request seeks a conclusion not supported by the evidence.

■ As stated in *McGann* v. *Capital Savings Bank & Trust Co.*, 117 Vt. 179, 189, 89 A.2d 123, "It is a familiar principle of equity that a trust is implied whenever the circumstances are such, that the person taking the legal estate, whether by fraud or otherwise, cannot enjoy the beneficial interest without violating the rules of honesty and fair dealing." *Miller* v. *Belville*, 98 Vt. 243, 247, 126 Atl. 590. The failure on the part of the plaintiffs to keep their end of the bargain by repayment to the defendants within the period agreed upon, and the apparent willingness on the part of the defendants to deed the property to the plaintiffs if reimbursed within that period, does not support a violation of the rules of honesty or fair dealing. The record discloses that the defendants stood ready and willing to perform their part of the bargain,—the plaintiffs did not.

Plaintiffs lay considerable stress on the case of *Johnson* v. *Burke and Horr*, 75 S.D. 285, 63 N.W.2d 794, in support of their claim that the defendants are accountable for the property on the basis of a constructive trust. The facts in that case are not the same as here. Furthermore, in that state there existed a statute providing that "when a transfer of real property is made to one person and the consideration therefor is paid by or for another a trust is presumed to result in favor of the person by or for whom such payment is made." We have no similar statute in Vermont.

■ Moreover, we are not unmindful of the fact that this proceeding was not commenced until July 1950, a period of six years after the property in question was purchased by the defendants. Reasonable diligence is essential in order to call into activity a court of chancery, and if this factor is wanting, the court does nothing. 19 Am. Jur. Equity, §480. The plaintiffs have slept on their rights, if any they may have had, and by their inaction have to this extent strengthened the claims of the defendants as confirmed by the chancellor's findings.

486

We must read the evidence in support of the findings, if reasonably possible, when considered as a whole. *In re Petition of Bolduc,* 121 Vt. 20, 22, 146 A.2d 240; *Montpelier* v. *Bennett,* 119 Vt. 228, 231, 125 A.2d 779. Plaintiffs' brief as relating to the decree raises only the question as to whether the decretal order is supported by the facts found. *In re Estate of Boynton,* 121 Vt. 98, 100, 148 A.2d 115; *Dindo* v. *Cappelletti,* 116 Vt. 403, 405, 77 A.2d 840.

Certain points presented in the defendants' brief need not be passed upon in view of our disposition of this case.

The evidence supports the findings, and the findings support the decree dismissing the bill.

*Decree affirmed.*